UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

PAMELA KAY HAMBRICK, )
    Plaintiff, )
)
v. ) Case No. 4:10-cv-54
) (Mattice/Carter)
MICHAEL J. ASTRUE )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Judgment on the Administrative Record (Doc. 11), defendant's Motion for Summary Judgment (Doc. 13), and Plaintiff's Reply Brief (Doc. 15).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(I) and 423.

For reasons that follow, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff Pamela Kay Hambrick was born on May 21, 1956. She has a high school education and two years of college with some computer training (Tr. 63-64, 178). She was 49 years old on her disability onset date, which is defined as a "younger person" under 20 C.F.R. §404.1563(c) (Tr. 165). As recently as 2005, Plaintiff had performed an assembly job (Tr. 64). She had also worked as a payroll supervisor, which she described as clerical work or office type

1

work (Tr. 64).

## Claim for Benefits

Plaintiff applied for Disability Insurance Benefits (DIB) on October 10, 2006, alleging a disability onset date of February 28, 2006 (Tr. 165-69). After denials at the initial and reconsideration stages, Plaintiff requested a hearing and on January 29, 2009, she appeared and testified before Administrative Law Judge (ALJ) Ronald Feibus (Tr. 56-90). During this hearing, the ALJ concluded he needed medical expert testimony and told Plaintiff that he would schedule a supplemental hearing at which he would take the testimony of a medical expert (Tr. 61-63, 87-88). On April 28, 2009, ALJ Feibus took testimony from Alexander Todorov, M.D. (Tr. 10-42). On June 10, 2009, ALJ Feibus determined that Plaintiff was not disabled because she could perform her past relevant sedentary job as an administrative assistant (Tr. 47-55). Plaintiff requested Appeals Council review (Tr. 8-9), but the Appeals Council declined review on June 4, 2010, making the ALJ's decision the Commissioner's final decision in this matter (Tr. 1-5). 20 C.F.R. § 404.981. Plaintiff has requested judicial review.

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is

2

engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir.

3

1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.

2. The claimant has not engaged in substantial gainful activity since February 28, 2006, the alleged onset date (20 C.F.R. 404.1571 *et seq*.).

3. The claimant has the following severe impairments: history of right knee degenerative joint disease, reflex sympathetic dystrophy of the right knee, left ankle impairment, asthma, obstructive sleep apnea, migraines, and a history of cervical disk fusion (20 C.F.R. 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a).

6. The claimant is capable of performing past relevant work as an administrative assistant (Exhibit 12D). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2006 through the date of this decision (20 C.F.R. 404.1520(f)).

(Tr. 49-55).

## Issues Raised

1. Whether the ALJ erred by finding that the Plaintiff has the Residual Functional Capacity (RFC) to perform a full range of sedentary work.

2. Whether the ALJ failed to give consideration to all the evidence before him.

3. Whether the ALJ erred in not considering Plaintiff's obesity and its effects on her ability to work.

4. Whether the ALJ erred by not giving proper weight to the opinions of the treating

physicians in accordance with 20 CFR §404.1527.

5.   Whether the ALJ committed reversible error in failing to comply with Social Security Ruling 96-7p and 20 CFR §404.1529 in evaluating Plaintiff's subjective limitations.

6.   Whether the ALJ committed reversible error in failing to correctly evaluate Plaintiff's mental conditions in accordance with 20 CFR §§404.1520(a) and 1545(c).

7.   Whether the ALJ erred in finding that Plaintiff could perform her past work.

Relevant Facts

Medical Evidence

Plaintiff has referred to evidence from 1993-94 showing treatment after she was involved in a motor vehicle accident that caused neck problems and eventually resulted in surgery done by Dr. Schoettle (Tr. 315-20).

On February 23, 2006, a report from Gary R. Stevens, D.O., indicated he had discussed a number of treatment options with Plaintiff and that they had decided that she should undergo an arthroscopic procedure for diagnosis as well as treatment (Tr. 339). Other records signed by Dr. Stevens showed he reviewed a normal chest x-ray (Tr. 340), and an x-ray of Plaintiff's right knee that revealed adhesive calcification of the superior surface of her patella (Tr. 341). Two months after the right knee procedure, Dr. Stevens reported Plaintiff demonstrated full range of motion, that her neurovascular status was good, and that she was walking without difficulty. With respect to returning to work, Dr. Stevens commented, that because Plaintiff's work was seasonal, she could not return to work that currently did not exist. Dr. Stevens also indicated that he gave Plaintiff a note that she "may work preferably (at) a sit down job with no restrictions" (Tr. 329).

In a report dated January 20, 2007, James Extine, D.O., reviewed Plaintiff's diagnosis of

5

plantar fasciitis (Tr. 544-46). Dr. Extine commented, "she did have a little plantar fasciitis, but did not have any ankle fracture." She had a little tenderness to the plantar fascia. Dr. Extine diagnosed plantar fasciitis and set out a plan to treat it with silicone heel cups and stretching exercises. He also wanted Plaintiff to start on the medication Celebrex. In the same report, Dr. Extine also noted full range of motion and generalized tenderness to palpation. (Tr. 544). On March 8, 2007, he planned to refer Plaintiff to Dr. Gordon to rule out RSD. Dr. Extine reported that Plaintiff, despite Supartz injections to her knee, was still reporting a lot of pain with no improvement in her symptoms. (Tr. 501).

On April 5, 2007, Ronald J. Gordon, M.D., increased Plaintiff's dosage of Neurontin and asked Dr. Cole to increase the dosage of her Cymbalta. He reported Plaintiff's statement that a recent injection had provided her with 2.5 days of almost complete pain relief. He planned additional lumbar sympathetic blocks and in-home physical therapy. (Tr. 539).

Plaintiff had a five-day stay at the Diamond Headache Center in Chicago, Illinois from May 25-30, 2007. The discharge summary indicated that she was showing improvement as of May 26, 2007. By May 29, 2007, the report indicated that Plaintiff had minimal headaches and she was discharged on May 30, 2007. (Tr. 572). The discharge summary also indicated that, during hospitalization, the clinic managed Plaintiff's acute pain with simple non-narcotic analgesic medications on most occasions. Testing done during the clinic stay included a normal MRI of Plaintiff's brain, and an EKG that also revealed normal results. A study, possibly the MRI, showed left ethmoid and left maxillary sinusitis. (Tr. 573).

On August 6, 2007, Plaintiff saw Peter M. Klara, Ph.D., who recommended that Plaintiff be considered for a trial of dorsal column stimulation. Plaintiff told Dr. Klara that she had two

6

procedures on her right knee.  After the first one, she still had stabbing and burning pains.  She acknowledged that after the second procedure, the stabbing pains decreased substantially.  Plaintiff continued to complain of burning pain about her knee and lower leg.  On examination, Dr. Klara described Plaintiff as an obese female.  Dr. Klara diagnosed RSD or chronic regional pain syndrome of Plaintiff's right leg following the orthopedic procedures (Tr. 632-33).

On November 27, 2007, Plaintiff saw Robert M. Bell, DPM, a podiatrist (foot specialist) for her complaints of chronic left foot pain.  According to Dr. Bell, Plaintiff reported no improvement in her foot pain, but spent a considerable period of time discussing other problems that she was having.  Dr. Bell expressed his desire to keep Plaintiff reasonably active and noted that his clinical examination of her foot did not really show any problems (no swelling, no discolorations, no temperature differential, no ulcerations, no rashes or orthopedic deformities). (Tr. 555).

Csaba Rusznak, M.D., an asthma specialist, saw Plaintiff twice, and on the second occasion, January 16, 2008, this doctor recommended that Plaintiff take the medication Spiriva, regularly rather than on an as-needed basis.  Dr. Rusznak noted that this recommendation was consistent with Dr. Cole's recommendation that she take the Spiriva daily and counter to Plaintiff's statement that she had only used Spiriva a couple of times. (Tr. 634).

On March 21, 2008, Richard Cole, M.D., filled out a Medical Source Statement of Ability To Do Work-Related Activities (Physical) (Tr. 578-83).  In addition to finding Plaintiff could not perform a full range of sedentary work, Dr. Cole indicated Plaintiff had hand pain due to arthritis in her right thumb (Tr. 580). She had back pain and used a dorsal column stimulator (Tr. 581). She was limited due to severe asthma and COPD (Tr. 582).  Dr. Cole also mentioned

7

that Plaintiff was status-post arthroscopy in her right knee and complained of severe migraine headaches (Tr. 583).

On June 9, 2008, David C. Mathis, Ed.D., reported that he was seeing Plaintiff for the first time in a year. She presented in emotional distress. Dr. Mathis evaluated Plaintiff for anxiety and panic attacks and noted that she had not done well during the past year. Dr. Mathis attributed Plaintiff's problems to her decision to discontinue Elavil and to the recent death of her mother. Plaintiff reported that she was "judicious" in her use of Xanax, but Dr. Mathis opined that she needed to take that medication on a more regular basis and he also suggested adding a medication with a longer effect, like Klonopin. (Tr. 585).

On April 9, 2009, Plaintiff was seen at Sleep Centers of Middle Tennessee and their testing showed that she had obstructive sleep apnea. The Sleep Center treated this problem by writing a prescription for a CPAP machine (Tr. 640-42).

Dr. Todorov's Testimony

On April 28, 2009, the ALJ took testimony from Alexander Todorov, M.D., a medical expert (Tr. 16-42). Dr. Todorov identified such medical problems as chronic regional pain syndrome in Plaintiff's right leg, her right knee procedures, plantar fasciitis of her left foot, headaches, anxiety and depressed mood, hypertension, asthma, chronic obstructive pulmonary disease, and back pain (Tr. 17). Referring to the RSD in Plaintiff's right leg, Dr. Todorov noted that other than claimant's complaints of chronic pain, nothing in the record demonstrated RSD (Tr. 18). Dr. Todorov noted that Plaintiff did display some signs of RSD, but because she did not fulfill all of the criteria, he would use the broader term of chronic regional pain syndrome. He noted the diagnosis of plantar fasciitis was vague and again, based primarily on the claimant's

8

complaints. (Tr. 19).

Dr. Todorov referenced the records of the Diamond Headache Clinic when referring to Plaintiff's headaches (Tr. 19-20). Dr. Todorov stated that the records, in general, were not informative with regard to the frequency of Plaintiff's headaches (Tr. 20). Dr. Todorov ultimately concluded the headaches did not constitute a major problem (Tr. 22). Dr. Todorov noted that one way to document the severity of one's headaches would be to look at the patient's emergency room visits (Tr. 23). Plaintiff's attorney pointed to several different types of treatment without success but acknowledged that there were not a lot of hospitalizations (Tr. 24). On the other hand, the representative emphasized that a patient like Plaintiff would not travel to Chicago for headache treatment unless she felt that her headaches constituted a significant problem and pointed to visits to the doctor for shots (Tr. 24). Dr. Todorov testified that he would not set out a residual functional capacity (RFC) for Plaintiff that limited her to less than a full range of sedentary work based on all of her medical findings except the headaches. He further testified the musculoskeletal headaches were neither non-treatable nor intractable (Tr. 36).

Analysis

1. Plaintiff first argues the ALJ erred by finding Plaintiff has the Residual Functional Capacity (RFC) to perform a full range of sedentary work. For reasons that will be set out in this Report and Recommendation, I conclude there is substantial evidence to support the ALJ's conclusions. Certainly there is evidence on the other side, but on balance, I conclude the ALJ had adequate reasons for rejecting the opinions of the treating physician and adopting the opinion of the medical expert. Plaintiff argues if actual exertional and non-exertional limitations, environmental restrictions, mental diagnoses, and complaints of pain had been appropriately

9

considered, her RFC would be for less than a full range of sedentary work in accordance with 20 C.F.R. §404.1567(a). I do not agree. Further, Plaintiff argues even if her residual functional capacity is for a full range of sedentary work, and she cannot perform her past work, she would still be considered disabled under the Medical-Vocational Guidelines ("Grids"), if her borderline age is considered to be in the category of a "person closely approaching advanced age" (20 C.F.R. §404.1563(d); 20 C.F.R. Part 404, Subpt. P, App. 2, §201.00). However, in this case, the ALJ concluded Plaintiff was not disabled at step four of the sequential evaluation process so the Grid rules are inapplicable and not an issue. *See* 20 C.F.R. §§ 404.1520(f), (g), 404.1560(c), 404.1569, 416.920(f), (g), 416.960(c), 416.969. Thus, Rules 201.06, 201.14, or 202.06 did not apply. Since the ALJ found Plaintiff capable of performing her past relevant work, the Grids did not apply. Here the ALJ found Plaintiff could perform her past work at step four of the sequential evaluation.

    2. Next, Plaintiff argues the ALJ failed to consider all the evidence before him. As the Commissioner argues, at least some of this evidence has less relevance to the period at issue here. Plaintiff is only alleging disability as of February 28, 2006. For example, Plaintiff refers to Dr. Schoettle (Doc 12, Plaintiff's Brief p. 12). This doctor saw Plaintiff in 1993-94 (Tr. 315-20). Further, the ALJ noted Plaintiff had fusion surgery at C5-6 in 1993 (Tr. 52). Plaintiff refers to records from Dr. Stevens and cites to Tr. 329-41. As the Commissioner notes, many of these reports are signed by a physical therapist, Mary Walker (Tr. 330, 332, 334-35). The reports that Dr. Stevens did sign provide support for the ALJ's determination. On February 23, 2006, Dr. Stevens indicated that Plaintiff wanted to undergo an arthroscopic procedure on her right knee for diagnosis as well as treatment (Tr. 339). After either Dr. Stevens or Dr. Extine performed the

10

knee procedure, subsequent records signed by Dr. Stevens showed that he reviewed a normal chest x-ray (Tr. 340), and an x-ray of Plaintiff's right knee revealed adhesive calcification of the superior surface of her patella (Tr. 341). Two months after the right knee procedure, Dr. Stevens reported that Plaintiff demonstrated full range of motion, that her neurovascular status was good, and that she was walking without difficulty, though she still had days with some soreness (Tr. 329). With respect to returning to work, Dr. Stevens gave Plaintiff a note that she "may work preferably (at) a sit down job with no restrictions" (Tr. 329). These findings are consistent with the ALJ's finding that Plaintiff could return to her past sedentary job.

Plaintiff complains that eight of Plaintiff's doctors were not mentioned in the ALJ's decision (Doc. 12, Plaintiff's Brief at 12). The Commissioner argues Plaintiff is confused about the various names for the Diamond Headache Clinic. Plaintiff's brief attributes the records at Tr. 563-77 to Betsy J. Pepper, M.D., referring to a five-day hospitalization in May 2007, at the headache clinic of St. Joseph's Hospital (Doc. 12, Plaintiff's Brief p. 12). The Commissioner argues she is referring to the same report that Dr. Todorov discussed in detail during his testimony. The only difference being that Dr. Todorov referred to the five days at the Diamond Headache Clinic whereas Plaintiff is referencing the same place and simply calling it the headache clinic at St. Joseph's Hospital. The ALJ discussed Plaintiff's complaints of frequent headaches in his decision (Tr. 52-53), and specifically mentioned her contact with a headache clinic in Illinois (Tr. 53).

Further, the Commissioner argues that, while the ALJ did not refer specifically to Csaba Rusznak, M.D., by name, he did refer to the report that Dr. Rusznak submitted, noting that Plaintiff acknowledged not taking her prescribed medications when she saw an asthma specialist

11

in 2007 and 2008. The ALJ referenced Exhibit 24 (Tr. 53). That exhibit consists of Dr. Rusznak's treatment records (Tr. 634-37). The ALJ referred to Dr. Rusznak's January 16, 2008, report where this doctor recommended that Plaintiff take the medication Spiriva regularly rather than on an as-needed basis (Tr. 634). Dr. Rusznak noted that this recommendation was consistent with Dr. Cole's recommendation that she take the Spiriva daily and counter to Plaintiff's statement that she had only used Spiriva a couple of times (Tr. 634-37). I conclude the ALJ did not ignore Dr. Rusznak's reports.

Plaintiff also asserts that the ALJ, in addition to ignoring a good deal of significant evidence, also failed to take into consideration the possible side effects from the numerous medications that she took (Doc. 12, Plaintiff's Brief at 13). As the Commissioner points out, the ALJ observed Plaintiff did not always take her medications as directed. The ALJ's observation, supported in Dr. Rusznak's reports, was that she did not take her asthma medications as directed. In addition, when Plaintiff saw Dr. Mathis in June 2008, he noted that she had not done well during the past year for two reasons. One was the death of her mother, but the other was her decision to discontinue Elavil. Plaintiff told Dr. Mathis about her "judicious" use of Xanax, but Dr. Mathis opined that she needed to take that medication on a more regular basis (Tr. 585).

Although Plaintiff contends the ALJ failed to consider all of the evidence before him, an ALJ is not required to discuss each and every piece of evidence. This Court can consider all of the evidence in the record as a whole and determine if there is substantial evidence in light of all the evidence to support the ALJ's decision. *See Heston v. Commissioner of Social Security, 245 F.3d 528, at 535,536 (6th Cir 2005); Walker v. Sec'y of Health & Human Servs*., 884 F.2d 241, 245 (6th Cir. 1989) (Secretary need not address every piece of evidence in the record); *Johansen*

*v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002) ("Though the ALJ need not address every piece of evidence, he must articulate, at some minimum level, his analysis of the record so that the reviewing court can follow his reasoning."). An ALJ is not required "to recite the medical opinion of a physician verbatim in his [RFC] finding." *Poe v. Comm'r of Soc. Sec.*, No. 08-5912, 342 F. App'x 149, 157 (6th Cir. Aug. 18, 2009). An RFC assessment is an administrative finding reserved for the ALJ's determination. *See* 20 C.F.R. § 416.927(e); Social Security Ruling (SSR) 96-5p, 1996 WL 374183 (S.S.A.). In this case I conclude the ALJ appropriately considered the evidence of record before him.

    3. Plaintiff next argues the ALJ erred in not considering her obesity and its effects on her ability to work. As the Commissioner notes, the ALJ considered the evidence as a whole, and this included reports from doctors who factored her obesity into their recommendations. In November 2007, Dr. Bell, a foot specialist, discussed the need to keep Plaintiff reasonably active (Tr. 555). Dr. Klara, in his report, described Plaintiff as an obese female (Tr. 632). Dr. Todorov referred to Dr. Klara's report in his testimony, and the ALJ assigned significant weight to Dr. Todorov's testimony. I therefore conclude the ALJ adequately considered Plaintiff's obesity, particularly in light of the fact that he found Plaintiff capable only of sedentary work.

    4. Next Plaintiff argues the ALJ erred by not giving proper weight to the opinions of the treating physicians in accordance with 20 CFR §404.1527. There may be circumstances where an ALJ will reject the conclusions on a form submitted by a treating doctor, (Dr. Cole), and assign controlling weight to the testimony of a non-examining medical expert, (Dr. Todorov), because that doctor had the opportunity to view (or review) the entire record (Tr. 54). As the Commissioner notes, there is case law that supports the ALJ's approach. *See Callahan v. Sec'y*

13

*of Health & Human Servs.*, 1990 WL 18060,*2 (6th Cir. Mar. 1, 1990) ("The conclusions of an independent medical advisor provide medical support for the ALJ's determinations") (rejecting opinions of examining psychologists). As Plaintiff notes, Dr. Todorov neither met, nor examined Plaintiff, but he did review the medical records. Plaintiff argues Dr. Cole should be granted controlling weight because he treated her between 2004 and 2008. However, Plaintiff refers to few of Dr. Cole's ongoing treatment reports. Plaintiff relies on the conclusory opinions that Dr. Cole formulated on the physical RFC form (Medical Source Statement) that he filled out in March 2008 (Tr. 578-83). I conclude the ALJ provided good reasons for assigning little weight to Dr. Cole's medical source statement. Plaintiff observes in her brief that Dr. Cole opined she could never tolerate exposure to dust, odors, fumes, or pulmonary irritants due to her severe asthma and COPD (Doc. 12, Plaintiff's Brief at 15). The ALJ commented upon Plaintiff's asthma, noting that she complained of asthma for years, and doctors prescribed appropriate treatments for it. Plaintiff, however, did not always comply with her treatment (Tr. 54). Even with the non-compliance, Plaintiff's asthma, as the ALJ observed, did not require medical intervention for any acute exacerbation during the period at issue here (Tr. 54). To support his observations regarding non-compliance with asthma treatment, the ALJ referred to the report from Dr. Rusznak (Tr. 53). Plaintiff told Dr. Rusznak that Dr. Cole had prescribed Spiriva for her and told her to use it on a daily basis (Tr. 634). Plaintiff, however, told Dr. Rusznak that she had only used Spiriva once or twice (Tr. 634). The ALJ also referred to Dr. Todorov's testimony that there were no tests in the record that would verify a diagnosis of COPD (Tr. 53). I conclude these are sufficient reasons which support the ALJ's decision to give Dr. Cole's findings little weight.

14

Plaintiff argues that Dr. Cole's opinion is supported by the report from Dr. Klara, who examined Plaintiff and reported normal motor strength everywhere except her right knee, which Dr. Klara did not test (Tr. 632). Dr. Klara also reported a full range of cervical spine and lumbar spine motion (Tr. 633). Dr. Klara, however, recommended that Plaintiff try a dorsal lumbar stimulator (Tr. 633). Plaintiff argues that Dr. Klara would not have made such a recommendation had he not believed that Plaintiff's complaints were genuine (Doc. 12, Plaintiff's Brief at 16). However, this does not necessarily mean that Plaintiff was more limited than the ALJ found. A limitation to a full range of sedentary work appears to be consistent with many of Dr. Klara's findings, specifically her good muscle strength and full ranges of motion in her cervical and lumbar spine. Once again, I conclude the ALJ provided good reasons for relying on Dr. Todorov's testimony and for assigning little weight to Dr. Cole's form. The ALJ, who stands at the end of the process, has the obligation to consider the entire record evidence and, with the advantage of seeing the entire record including the hearing testimony, make the ultimate decision concerning disability. It is the province of the Commissioner to weigh the evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("The trier of fact has the duty to resolve [the medical evidence] conflict"). I conclude that the ALJ has done so and there is substantial evidence to support his conclusion.

5. Plaintiff argues the ALJ committed reversible error in failing to comply with Social Security Ruling 96-7p and 20 CFR §404.1529 in evaluating Plaintiff's subjective limitations. In general, courts usually defer to an ALJ's credibility finding, particularly because the ALJ has the unique opportunity of observing the claimant while she provides her testimony. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the

ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."). Moreover, Plaintiff argues the ALJ's credibility finding consisted of nothing more than a single conclusory statement (Doc. 12, Plaintiff's Brief at 17). The ALJ doubted Plaintiff had significant manipulative limitations and observed that the medical record described no credible restriction on the use of her right hand (Tr. 54). Plaintiff refers to Dr. Cole's limitations, however, those limitations the ALJ found unsupported by tests of examination findings. I conclude there is substantial evidence to support this conclusion.

      6. Plaintiff then argues the ALJ committed reversible error in failing to correctly evaluate Plaintiff's mental conditions in accordance with 20 CFR §§404.1520(a) and 1545(c). The ALJ found that Plaintiff's mental impairments, including affective and anxiety-related disorders, did not cause more than minimal limitations on her ability to perform basic mental work activities (Tr. 49). The ALJ further considered Plaintiff's mental impairments by evaluating them under the "B" criteria of the listings and found that she had mild limitations in the first three areas (activities of daily living, social functioning, and concentration, persistence, and pace) and that she had no episodes of decompensation of an extended duration (Tr. 50). Plaintiff challenges the ALJ's findings that she has "frequent" difficulties in carrying out her activities of daily living (Doc. 12, Plaintiff's Brief at 20). However, Plaintiff has not referred to any episode from the record that would support her allegation. In addition, the ALJ traced at least some of Plaintiff's problems to her failure to follow treatment recommendations. As discussed above, Dr. Mathis attributed some of Plaintiff's mental problems to her decision to completely stop Elavil and to use Xanax "judiciously," rather than regularly as her doctor

16

suggested (Tr. 585). I conclude the ALJ adequately considered Plaintiff's mental conditions (see Tr. 49-50). I conclude there is substantial evidence to support the conclusion that Plaintiff's mental impairment was non-severe.

      7. Finally Plaintiff argues the ALJ erred in finding Plaintiff could perform her past work. Plaintiff contends the ALJ erred in finding the claimant could perform her past work, especially without obtaining the testimony of a vocational expert regarding the possible effects on the claimant's ability to work due to her non-exertional limitations and environmental restrictions. She points out that no testimony was received from a vocational expert (VE), even though vocational experts were noticed to appear at both hearings, and the claimant was informed that a vocational expert would testify at each hearing. The Commissioner responds noting that, although taking the testimony of a vocational expert at step four may be useful, there is no requirement that an ALJ use a vocational resource at step four. *See Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (At step four, "the ALJ was not required to solicit testimony from a VE in reaching his conclusion."). Here, the ALJ referred to an assessment done by an examiner, Lynne P. Clark, in June 2007 (Tr. 244-46). In that assessment, Ms. Clark identified past work performed by Plaintiff as that of an administrative assistant. She indicated that Plaintiff performed this job at the sedentary level according to the *Dictionary of Occupational Titles* (DOT) (Tr. 245). The ALJ, after referring to the exhibit submitted by Ms. Clark, found that Plaintiff could perform this job (Tr. 55). Plaintiff challenges this finding, but she does not refer to Ms. Clark's exhibit. Instead, she argues there is conflicting evidence about her past job title (Doc. 12, Plaintiff's Brief at 22). However, she does not demonstrate that, regardless of job title, she performed her past clerical jobs at other than the sedentary level.

17

Plaintiff does refer to an initial determination, but it is well-established that an ALJ is not bound by the previous determinations. The ALJ's step four finding is well supported. Further even that determination, which found her no longer able to perform the job of "accounting and office worker" as she described it, went on to say she had the ability to perform the job as most other workers describe it (Tr. 129). Given all these factors, I conclude the ALJ reasonably found that Plaintiff was not disabled at step four and was not entitled to DIB.

## Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the conclusion of the ALJ and I therefore RECOMMEND the Commissioner's decision be AFFIRMED.

I further RECOMMEND defendant's Motion for Summary Judgment (Doc. 13) be GRANTED, and plaintiff's Motion for Judgment on the Administrative Record (Doc. 11) be DENIED and the case be DISMISSED.[1]

S /*William B. Mitchell Carter*/
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).